THE BOARD OF COUNTY COMMISSIONERS OF PINELLAS COUNTY, FLORIDA, *et al.*, Appellants, v. JOHN R. HERRICK, Appellee.

and

JOHN R. HERRICK, Cross-Appellant, v. THE BOARD OF COUNTY COMMISSIONERS OF PINELLAS COUNTY, FLORIDA, *et al.*, Cross-Appellees.

167 So. 386.

En Banc.

*John C. Blocker, Jr.,* and *Allen C. Grazier,* for Appellants;

*Ralph Richards,* for Appellee.

DAVIS, J.—The County Commissioners of Pinellas County, Florida, have been impleaded as defendants in a suit for injunction filed by a taxpayer·wherein it was alleged that a certain challenged resolution adopted by them acting as the Board of County Commissioners of said County, amounts to an unconstitutional proposal and attempt on their part as county officers to issue obligations that are in contemplation of law county bonds of Pinellas County, in violation of provisions of amended Section 6 of Article IX of the State Constitution that authorize county bonds to be issued only when lawfully approved by an affirmative vote of a majority of the qualified electors freeholders voting in favor of same in a lawful election duly called and held in the county, wherein a majority of all of the qualified freeholder electors shall have participated. The Circuit Court held against the validity of the complaining taxpayer's objections. An appeal by him from the Chancellor's order to that effect brings the controversy to this Court for review.

The resolution thus brought into controversy as the subject matter of this suit, reads as follows:

"A RESOLUTION PROVIDING FOR THE CONSTRUCTION OF A WATER SUPPLY AND DISTRIBUTION SYSTEM AND TO AID IN FINANCING THE COST OF SAID CONSTRUCTION, PROVIDING FOR THE ISSUANCE OF $179,000 REVENUE CERTIFICATES OF PINELLAS COUNTY, FLORIDA, PAYABLE SOLELY FROM THE

REVENUES DERIVED FROM SAID WATER SUPPLY AND DIS-
TRIBUTION SYSTEM.

*"Be It Resolved by the Board of County Commissioners of Pinellas County, State of Florida, and it is Hereby Resolved that:*

"Section 1. Pursuant to Chapter 17644, Laws of Florida, Special Acts of 1935, it is hereby determined to proceed with and there is hereby authorized the construction of a water supply and distribution system, including the acquisition of lands, easements and rights in land in connection therewith (herein collectively called the "Project), for the purpose of supplying drinking water to the inhabitants of that certain chain of islands bordering on the Gulf of Mexico in Pinellas County, extending from Pass-a-Grille to Indian Rocks.

"Section 2. The estimated cost of construction of the project is $274,545.

"Section 3. To aid in financing the cost of contruction of the Project, there are hereby authorized to be issued revenue certificates of Pinellas County, Florida (herein called the 'Certificates'), each to be known as 'Water Revenue Certificates of 1936,' in the aggregate principal amount of $179,000.

"The Certificates shall be dated March 1, 1936, shall be in the denomination of $1,000 each, shall be numbered in order of their maturity from 1 to 179, both inclusive, shall bear interest at the rate of four percentum (4%) per annum payable semi-annually on March 1 and September 1 in each year from the date thereof until maturity; shall be payable as to both principal and interest at the office of_____County depository, in _____Pinellas County, Florida, or at the option of the holder, at the_____New York

City, N. Y., in such coin or currency as is, on the respective dates of payment of principal thereof and interest thereon, legal tender for the payment of public and private debts; shall be in coupon form, shall be registerable as to pincipal only at the option of the holder; and shall mature serially on March 1 in years and amounts as follows:

| Year | Amount | Year | Amount | Year | Amount |
|------|--------|------|--------|------|--------|
| 1940 | $1,000 | 1949 | $6,000 | 1958 | $7,000 |
| 1941 | 2,000  | 1950 | 6,000  | 1959 | 7,000  |
| 1942 | 2,000  | 1951 | 6,000  | 1960 | 11,000 |
| 1943 | 3,000  | 1952 | 6,000  | 1961 | 11,000 |
| 1944 | 3,000  | 1953 | 7,000  | 1962 | 11,000 |
| 1945 | 4,000  | 1954 | 7,000  | 1963 | 11,000 |
| 1946 | 4,000  | 1955 | 7,000  | 1964 | 11,000 |
| 1947 | 5,000  | 1956 | 7,000  | 1965 | 11,000 |
| 1948 | 5,000  | 1957 | 7,000  | 1966 | 11,000 |

"The Certificates shall be executed in behalf of Pinellas County by the signatures of the Chairman of its Board of County Commissioners, shall be sealed by the corporate seal of said Board, and shall be attested by the Clerk of said Board of County Commissioners, and the interest coupons thereto attached shall be executed by the facsimile signatures of said Chairman and said Clerk.

"Section 4. The Certificates and coupons attached thereto shall be substantially in the following form, to-wit:

"No................... $1,000

"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"PINELLAS COUNTY
"WATER REVENUE CERTIFICATE OF 1936

"Pinellas County, a political subdivision of the State of Florida, for value received, hereby promises to pay to

bearer, or if this certificate be registered to the registered owner hereof, solely from the certificate fund provided therefor, as hereinafter set forth, and not otherwise, the principal sum of ONE THOUSAND DOLLARS ($1,000) on March 1, 19.... and to pay interest on said principal sum solely from said certificate fund from the date hereof at the rate of four percentum (4%) per annum, payable semi-annually on March 1 and September 1 in each year, upon the presentation and surrender of the interest coupons attached hereto as they severally become due, until the maturity of this certificate. Both the principal of and interest on this certificate are payable at the office of ........................... County depository, in............Pinellas County, Florida, or, at the option of the holder, at the.................., New York City, N. Y., in such coin or currency as is, on the respective dates of payment thereof, legal tender for the payment of public and private debts.

"This certificate is one of a duly authorized issue of certificates, limited to an aggregate principal amount of $179,000, of like date, tenor and effect except as to number and maturity, is issued pursuant to and in full compliance with the Constitution and Statutes of the State of Florida, particularly Chapter 17,644, Laws of Florida, Special Acts of 1935, and by virtue of a Resolution entitled, 'A RESOLUTION PROVIDING FOR THE CONSTRUCTION OF A WATER SUPPLY AND DISTRIBUTION SYSTEM, AND TO AID IN FINANCING THE COST OF SAID CONSTRUCTION, PROVIDED FOR THE ISSUANCE OF $179,000 REVENUE CERTIFICATES OF PINELLAS COUNTY, FLORIDA, PAYABLE SOLELY FROM THE REVENUES DERIVED FROM SAID WATER SUPPLY AND DISTRIBUTION SYSTEM,' duly adopted by the Board of County Commissioners of Pinellas County on the.................day of ......................, 1936, and said resolution is hereby referred to

and, as to all of its terms and provisions, is made a part of this certificate.

"This certificate is issued to aid in financing the cost of construction of a water supply and distribution system, and is payable only from a certificate fund in which there shall be set aside annually, in approximately equal monthly installments out of the revenues and income derived from the operation of said water suppy and distribution system, including replacements, betterments and extensions thereto, hereafter constructed or acquired, such sums as shall be suffficient after provision for payment of all costs of operation, maintenance of said system, for the payment of the principal of and interest on said certificates as the same respectively shall become due, and, together with all other certificates of the issue of which this certificate is one, is secured by a pledge of and exclusive first lien upon all revenues and income derived from the operation of said system after deduction only of the reasonable costs of operation and maintenance of said system, all as in said resolution provided.

"This certificate is neither payable from nor a charge upon any funds other than the revenues pledged to the payment hereof, nor shall Pinellas County be subject to any pecuniary liability thereon. No holder or owner of this certificate shall ever have the right to compel any exercise of the taxing power of Pinellas County to pay this certificate or the interest hereon, nor to enforce payment hereof against any property of Pinellas County, nor shall the certificate constitute a charge, lien, or encumbrance legal or equitable, upon any property of Pinellas County other than upon the aforesaid revenues.

"This certificate and the coupons attached hereto are

issued upon the following terms and conditions, to all of which each holder and owner hereof consents and agrees:

"(a) Title to this certificate, unless this certificate be registered as herein provided, and to the coupons attached hereto, may be transferred by delivery in the same manner as a negotioable instrument payable to bearer; and

"(b) Any person in possession of this certificate, unless this certificate be registered as herein provided, or of the coupons attached hereto, regardless of the manner in which he shall have acquired possession, is hereby authorized to represent himself as the absolute owner thereof, and is hereby granted power to transfer absolute title thereto by delivery thereof to a bona fide purchaser, that is, to any one who shall purchase the same for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor; every prior holder or owner of this certificate, unless this certificate be registered as herein provided, and of the coupons attached hereto, waives and renounces all of his equities or rights therein in favor of every such *bona fide* purchaser, and every such *bona fide* purchaser shall acquire absolute title thereto and to all rights represented thereby; and

"(c) Pinellas County may treat the bearer of this certificate, unless this certificate be registered as herein provided, or of the coupons attached hereto, as the absolute owner thereof for all purposes without being affected by any notice to the contrary.

"This certificate shall pass by delivery as herein above provided, but it may be registered as to principal in the name of the holder on the books of Pinellas County, such registration being noted on the back hereof, after which no transfer shall be valid unless made on said books by the registered owner

and similarly noted on the back hereof, but it may be discharged from registry by being transferred to bearer on the books of Pinellas County and thereafter shall be transferable by delivery, but it may be again, from time to time, registered or transferred to bearer as before. No such registration as to principal shall affect the negotiability of the coupons attached hereto, which shall continue to pay by delivery merely.

"IT IS HEREBY CERTIFIED, RECITED, AND DECLARED that all acts, conditions and things required by the Constitution and Statutes of the State of Florida and by the resolutions of Pinellas County to exist, to happen, and to be performed, precedent to and in the issuance of this certificate, exist, have happened, and have been performed in due time, form, and manner as required by law.

"IN WITNESS WHEREOF, Pinellas County has caused this certificate to be executed in its name by the Chairman of its Board of County Commissioners, and the seal of said Board to be hereunto affixed and to be attested by the Clerk of said Board of County Commissioners, and the interest coupons hereto attached to be executed by said Chairman and said Clerk with their facsimile signatures, and this certificate to be dated the first day of March, 1936.

"(Seal)                                        "PINELLAS COUNTY

                                "By----------------------------------------------
                                Chairman, the Boad of County
"Attest:                        Commissioners

-----------------------------------------------
"Clerk, the Board of County
Commissioners.

"(VALIDATION ENDORSEMENT)

"Validated and confirmed by decree of the Circuit Court of the................................Judicial Circuit in and for Pinellas County, Florida, rendered on the.........day of.................1936.

"IN WITNESS WHEREOF, I have hereto set my hand and affixed the seal of said Circuit Court this.................day of ............................1936.

"(Seal)

------------------------------------------------
"Clerk of Circuit Court in and for Pinellas County, Florida.

"(FORM OF COUPON)

"No........................                                    $20.00

"On the first day of..........................., 19...., Pinellas County will pay to bearer, solely from the revenues pledged to the payment hereof, and not otherwise, at the office of................. County depository, in..........................Pinellas County, Florida, or, at the option of the holder, at the.................................... New York City, New York, upon surrender of this coupon, $20.00 in such coin or currency as is, on the date of payment hereof, legal tender for the payment of public and private debts, being six months interest on its Water Revenue Certificate of 1936 dated March 1, 1936, and numbered.................................

------------------------------------------------
"Chairman, the Board of County Commissioners.

------------------------------------------------
"Clerk, the Board of County Commissioners.

"(Registration Certificate)

"

| Date of Registration | Name of Registered Owner | Signature of Registrar |
|---|---|---|
| ----------------------------------- | ----------------------------------- | ----------------------------------- |
| ----------------------------------- | ----------------------------------- | ----------------------------------- |
| ----------------------------------- | ----------------------------------- | ----------------------------------- |
| ----------------------------------- | ----------------------------------- | ----------------------------------- |
| ----------------------------------- | ----------------------------------- | ----------------------------------- |

"Section 5. Pinellas County shall keep books for the registration and for the transfer of Certificates at the office of the Clerk of the Board of County Commissioners in Pinellas County.

."At the option of the holder, any Certificate may be registered as to principal in the Certificate Register of Pinellas County, by said Clerk as Certificate Registrar, and such Certificate may thereafter be transferred on said Certificate Register only upon an assignment in writing of the registered owner, or of his legal representative, duly acknowledged, such transfer to be endorsed on such Certificate by the Certificate Registrar. Such Certificate may be transferred to bearer on the Certificate Register and thereafter transferability by delivery shall be restored, but such Certificate shall again be subject to successive registration and transfers as before. No such registration as to principal shall affect the negotiatiability of the coupons attached to such Certificate, which shall continue to pass by delivery merely. No charge shall be made to any holder or owner of any Certificate for the privilege of registration or restoration to bearer form herein granted.

"Section 6. The Chairman of the Board of County Commissioners is hereby authorized and directed to execute the Certificates in the name of Pinellas County, and the Clerk

of said Board is hereby authorized and directed to affix the seal of the Board to the Certificates and to attest such seal. Said Chairman and said Clerk are hereby authorized and directed to cause the coupons attached to said Certificates to be executed respectively by their facsimile signatures. The Certificates hereby authorized shall be, and they are hereby awarded to the United States of America acting through the Federal Emergency Administrator of Public Works at par and accrued interest, and the Clerk of said Board is hereby authorized and directed to deliver said Certificates to the purchaser thereof, at one time or from time to time as he may deem advisable, upon receipt of payment therefor.

"Section 7. Said Certificates and the interest thereon shall be payable from a certificate fund (herein called the 'Certificate Fnud') provided therefor, as hereinafter set forth, and not otherwise, and shall be secured by a pledge of and exclusive first lien upon all the revenues set aside in the Certificate Fund. Nothing in this Resolution shall be deemed to create any encumbrance, mortgage, or other pledge of or charge upon any property or funds of Pinellas County other than the revenues pledged to the payment of said Certificates, as herein provided, or to impose any tax liability upon any real or personal property in said County, or to constitute a debt against such County.

"Section 8. The Clerk of the Board of County Commissioners is hereby authorized and directed upon receipts of payment for the Certificates or any part thereof to set aside and deposit in the Certificate Fund (hereinafter provided) the amount of such payment representing the interest accrued on any Certificates to the date of payment of the purchase price therefor and the amount, if any, of such payment which shall be estimated to accrue during the period

of construction of the Project and for six months thereafter, on monies borrowed pursuant to this Resolution. The remaining proceeds received by said Clerk from the sale and delivery of the Certificates shall be set aside and deposited by said Clerk in a separate account, to be known as the 'Water Construction Account' in a bank or banks which are members of the Federal Reserve System. The monies in said Water System Construction Account shall be used solely for the purpose of paying the costs of construction of the Project in the manner and subject to the terms and conditions provided in any contract or agreement with the purchaser or purchasers of any Certificates. Any unexpended balance remaining after the payment of the costs of such construction shall be used for the repurchase of the Certificates at a price not to exceed par and accrued interest, or shall be set aside and deposited in the Certificate Fund.

"Section 9. The water supply and distribution system of Pinellas County shall be operated on a fiscal year basis, commencing on the first day in July in each year and ending on the 30th day of June next following.

"From and after the date of the completion of the Project Pinellas County shall pay all of the revenues and income derived and obtained from the operation of the water supply and distribution system, including replacements, improvements, betterments, and extension thereto, hereafter constructed or acquired, into a special fund to be known as the 'Water System Revenue Fund.' Said County shall make a fair and reasonable monthly payment to the Water System Revenue Fund for any service which may be furnished the County or any of its departments. The County hereby covenants that said Water System Revenue Fund will be administered, held and applied by it until all the Certif-

icates issued under this Resolution and the interest thereon and the interest on any unpaid installments of interest shall have been fully paid and discharged, only for the following purposes and in the following manner:

"(a) Into a separate account to be known as the 'Water System Operation and Maintenance Account' there shall be paid during each month an amount sufficient for the purpose of paying all reasonable expenses of operation and maintenance of the water supply and distribution system, as improved, bettered, or extended, for such month, which monies shall be used for such purpose and for no other purpose; but if in any month, for any reason, the County shall fail to pay such amount into said Water System Operation and Maintenance Account, then an amount equal to any deficiency in the amount paid into said account in such month shall be added to the amount otherwise required to be paid into the account in the next succeeding month.

"(b) Into a separate account to be known as the 'Water System Certificate Fund' there shall be paid during each year in approximately equal monthly installments commencing on July 1 and ending on June 30 in each year, after making the above required payments into the Water System Operation and Maintenance Account, such amount as is required to pay (1) a sum equal to one hundred per centum (100%) of the principal of all of said Certificates maturing during the next succeeding fiscal year, (2) a sum equal to one hundred per centum (100%) of the interest becoming due on all outstanding Certificates next succeeding fiscal year, and, in addition in order to provide a reserve in such account (3) a sum at least equal to twenty per centum (20%) of the aggregate of the amounts defined by (1) and (2); payment of the additional amount defined by (3) shall be continued until there is in said Water System

Certificate Fund an amount equal to the aggregate of the amounts defined in (1) and (2) plus all the principal and interest payments maturing and becoming due during the next two fiscal years after the fiscal year referred to in (1) and (2) above; no payment need to be made into the Water System Certificate Fund when and so long as the amount in said fund is at least equal to the aggregate principal amount of Certificates then outstanding, plus the amount of interest due and thereafter to become due on said Certificates; but if in any month for any reason, the County shall fail to pay into said Fund the amounts herein required, then an amount equal to any deficiency in the amount paid into said Fund in such month shall be added to the amount otherwise required to be paid into said Fund in the next succeeding month; any monies at any time paid into the Water System Certificate Fund shall be held by the County in trust for the benefit of the holders from time to time of the Certificates and coupons attached thereto entitled to be paid from such monies, and the County shall not have any beneficial right or interest in any such monies; all monies in said fund shall be deposited in a bank or banks which are members of the Federal Reserve System and all sums in excess of an amount sufficient to discharge all principal and interest payments to become due within the next twelve-months period shall be continuously secured by or invested in direct obligations of the United States of America or obligations unconditionally guaranteed as to principal and interest by the United States of America, which obligations shall be at all times at least equal in market value to the amount of monies in said Fund to be secured; the monies in said Fund shall be used solely for the purpose of paying the principal of and interest on the Certificates issued hereunder and for no other purpose.

"Section 10. Pinellas County hereby covenants and agrees with the several holders and owners of Certificates as follows:

"(a) That it will not voluntarily create or cause to be created any debt, lien, charge or encumbrance having priority to the lien of the Certificates issued under this Resolution upon any of the revenues pledged to the payment of the Certificates and the interest thereon, and that it will not sell, mortgage, lease or otherwise dispose of or encumber any property essential to the proper operation of the water supply and distribution system.

"(b) That it will at all times preserve and protect the security of the Certificates and the rights of the Certificate holders under this resolution, and that it will at all times maintain, preserve and keep, or caused to be maintained, preserved or kept the water supply and distribution system, including all parts thereof and appurtenances thereto in good repair, working order and condition, and will from time to time make or cause to be made all necessary and proper repairs and replacements so that at all times the business carried on in connection therewith may be properly and advantageously conducted in a manner consistent with prudent management.

"(c) That it will not issue any obligations payable from the revenues of the water supply and distribution system unless the lien on such revenues for the payment thereof shall be junior and subordinate to the lien of the Certificates herein authorized.

"(d) That it will at all times prescribe and collect rates in connection with the water supply and distribution system, as improved, bettered or extended as it may deem reasonable, which said rates shall be at least sufficient after making reasonable allowances for contingencies and for a

margin of error in the estimates, to maintain the Water System Operation and Maintenance Account and the Water System Certificate Fund as provided by this Resolution.

"(e)    That it will at all times keep proper books of records and accounts in which full, true and correct entries will be made of all its dealings and transactions relating to the water supply and distribution system in accordance with standard principles of accounting, and that it will prepare and furnish to the original purchaser and to any holder or holders of any Certificates, upon written request of such holder or holders, not more than 30 days after the close of each semi-annual fiscal period, complete operating and income statements of the system in reasonable detail covering such semi-annual period, and not more than 60 days after the close of each fiscal year complete financial statements of the County and the system covering such fiscal year, certified by independent auditors.

"(f)    That it will maintain insurance on the water supply and distribution system as improved, bettered or extended, for the benefit of the holders of certificates issued under this Resolution so long as any of such Certificates or the interest shall remain outstanding or be unpaid, of a kind and in an amount which usually would be carried by a private corporation operating a similar type of undertaking.    The proceeds of any insurance, other than for loss of use and occupancy, shall be used only for (a) reconstruction, replacements or repairs, or (b) payments into the Water System Certificate Fund.    During the period of loss of use and occupancy, total or partial, resulting from risks and perils against which other insurance is or should be carried pursuant to this section, the proceeds of any such use and occupancy insurance shall be paid to the Water System Revenue Fund and shall be administered,

held and applied for the same purposes and in the same manner as provided by this Resolution for the use, disposition and application of the monies in such Fund.

"(g) That it will permit at all reasonable times so long as any of the Certificates are outstanding, any holder or holders of twenty per centum (20%) in principal amount of such Certificates then outstanding to inspect the water supply and distribution system and all accounts and records thereof.

"None of the foregoing covenants shall be construed as requiring the expenditure by the County of any funds other than revenues received or receivable from the water supply and distribution system as the same from time to time may be improved, bettered or extended.

"Section 11. In the event of a default in the payment of the principal of or interest on any Certificates issued under this Resolution, which default shall continue for a period of sixty (60) days, the holder or holders of twenty per centum (20%) in principal amount of Certificates then outstanding shall be entitled as a strict matter of right to the appointment of a receiver, which receiver may enter and take possession of the water supply and distribution system as improved, bettered and extended, operate and maintain the same, prescribe rates, and collect, receive and apply all revenue thereafter arising therefrom in the same way as the County itself might do. Unless the Court shall otherwise direct, whenever all that is due upon such Certificates and installments of interest and under any of the provisions of this Resolution shall have been paid and all defaults made good, said receiver shall surrender possession to the County, and that the same right to a receiver shall exist upon any subsequent default. This section shall not be construed as limiting the right of any holder of a Cer-

tificate to apply for the appointment of a receiver in the discretion of the Court, nor to limit the rights or remedies of any holder of Certificates or interest coupons under the Laws of Florida.

"Section 12. The rights and duties of Pinellas County and of the holders of the Certificates and coupons and the terms and provisions of this Resolution may be modified or altered in any respect by resolution of the Board of County Commissioners of Pinellas County with the consent of the holder or holders of seventy-five per centum (75%) in principal amount of all the Certificates then outstanding, such consent to be evidenced by an instrument or instruments executed by such holder or holders and duly acknowledged or approved in the manner of a deed to be recorded, and such instrument or instruments shall be filed in the office of the Clerk of said Board and shall be a public record.

"Section 13. If any section, paragraph, clause, or provision of this Resolution shall be held invalid, the invalidity of such section, paragraph, clause, or provision shall not affect any of the remaining provisions of this Resolution.

"Section 14. All resolutions or parts of resolutions inconsistent with this Resolution are hereby repealed, rescinded and revoked to the extent only of such inconsistency. This Resolution shall take effect immediately."

Chapter 17644 (House Bill No. 1067), Acts 1935, Special Laws of Florida, authorizes and empowers the Board of County Commissioners of Pinellas County, Florida, for and on behalf of such county, to construct, own, maintain and operate a water system for supplying drinkable water to the inhabitants of that certain chain of islands bordering on the Gulf of Mexico in said county extending from Pass-a-Grille to Indian Rocks, and to furnish water to other dis-

tricts or communities in said county; provides that the said Board of County Commissioners shall have power to manage, regulate and control in all respects the operation and managements of said water supply and distribution system, including the power to fix and determine rates (tolls) to be charged water consumers; confers authority to purchase water and otherwise to establish a source of supply for such system, and empowers the Board of County Commissioners to borrow money for such construction and maintenance from the Federal Government upon the terms and conditions and in the manner prescribed by such agreement, and as an incident thereto gives the Board the right to pledge the assets of such system as security for the repayment of money borrowed.

The Act in specific terms effectually provides in substance that at no time shall the Board of County Commissioners have the power to tax any person or taxable property for the purposes of the Act, nor to pledge the faith and credit of Pinellas County for the repayment of any sums of money procured from the United States Government on the strength of the authority for the project conferred by the Act on the Pinellas County Board of County Commissioners.

Other provisions of the Act invest the Board of County Commissioners with the power of eminent domain whenever necessary for the purpose of acquiring sites or land for the purpose of construction, maintenance and operation of the involved water project, and give to the Board additional power to employ with or without compensation a suitable personnel incident to the operation, maintenance and management of the enterprise. The last stated provision (which is found in Section 3 of the Act) was, however, enjoined by the Court below, which feature of the decree appealed from is challenged by the appellants' assignments of error. A cross

assignment of error challenges that part of the decree which was in favor of appellants.

That said Chapter 17644, Acts 1935, *supra*,* relates to a proper county purpose within the purview of Sections 1 to 8, inclusive, of Article VIII of the Constitution, inasmuch as it has been so determined, in effect, by the Legislature's enactment of the same pursuant to its powers under Section 24 of Article III of the Constitution, is to be regarded as settled in the affirmative by the following cases heretofore decided by this Court: Thursby v. Stewart, 103 Fla. 990, 138 Sou. Rep. 742; Duval County v. Jacksonville, 36 Fla. 196, 18 Sou. Rep. 339; 28 L. R. A. 416; Duval County v. Bancroft, 96 Fla. 128, 117 Sou. Rep, 799; Cotton v. Leon County Commrs., 6 Fla. 610; State v. Walton County, 97 Fla. 59, 119 Sou. Rep. 865; Jordan Duval County, 68 Fla. 48, 66 Sou. Rep. 298; Escambia County v. Board of Pilot Com'rs., 52 Fla. 197, 42 Sou. Rep. 697; State v. Walton County, 93 Fla. 796, 112 Sou. Rep. 630; Willis v. Special Road & Bridge Dist. No. 2, 73 Fla. 446, 74 Sou. Rep. 495; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 Sou. Rep. 146.

That the "water revenue certificates" provided to be issued pursuant to the resolution adopted by the defendant County Commissioners in accordance with said Chapter 17644, *supra,* are by their terms, so limited in obligation as to be mere debentures on new revenues in the form of water tolls contemplated to be made collectible as a *quid pro quo* for the water facilities hereafter to be afforded by

*It is to be observed, in passing, that prior to the introduction into the House of Representatives the proposed bill was, as found by the Legislature at page 707, House Journal, 1935 Session, duly advertised as a local measure in accordance with Section 21 of Article III of the State Constitution, as amended in 1928.

the project which the county is to unconditionally own outright *eo instanti* its construction and putting into operation as provided by the Act, and therefore such "water revenue certificates" are not county "bonds" within the prohibitions and limitations of amended Section 6 of Article IX of the Constitution, although admittedly not authorized by an election called and held pursuant to the constitutional section last mentioned, is made to appear beyond the possibility of successful contradiction, by a consideration of the factor that said "water revenue certificates" are, by a proper construction of their express provisions, specifically not a lien or mortgage on any franchise or physical property belonging to the state or county, or in any manner a claim against the county, or capable of being enforced against any taxable person or property subject to taxation in Pinellas County as the issuing county. Nor do such "water revenue certificates" appear to be part of any plan or scheme by which the taxable resources of the county can be, subsequent to their issuance and delivery, or while in the hands of takers in due course, sequestered, subjected, appropriated or used, directly or indirectly, as a means of paying them should the particular pledged water revenues upon which they are made a present and continuing lien, fail of realization in an amount sufficient to amortize and retire them at maturity.

Hence the above described and contemplated "water revenue certificates" are not in law, nor in fact, county bonds within the meaning or intendments of amended Section 6 of Article IX of the State Constitution and therefore they may be lawfully issued by the Board of County Commissioners of Pinellas County in manner and form as purported to be authorized by the resolution and legislative Act hereinbefore quoted and summarized.

The foregoing conclusion we reach on the authority of the following cases heretofore decided by this Court interpreting and construing the provisions and limitations of Amended Section 6 of Article IX of the Constitution of Florida as applied to the method of financing attempted to be employed in other, but very much similar cases, in order to secure the benefit to a specified community of self liquidating water facilities as a means of conserving and protecting the public health, convenience and welfare thereby. State v. City of Daytona Beach, 118 Fla. 29, 158 Sou. Rep. 300; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6. Compare Boykin v. Town of River Junction, 121 Fla. 902, 164 Sou. Rep. 558; Leon County v. State, 122 Fla. 505, 165 Sou. Rep. 666.

If Section 3 of Chapter 17644, Acts of 1935, is, indeed, unconstitutional as was held by the Chancellor below, it is plainly separable from the remaining portions of the Act. Therefore, any judicial declaration to that effect should not defeat the effectiveness of the other provisions of Chapter 17644, *supra,* which we herein and hereby hold to be valid as against the several objections raised and urged in and by appellants' suit against them.

But the lower court's decision, to the effect that Section 3 of Chapter 17644, Acts 1935, is unconstitutional, we regard as prematurely arrived at. This is so, because it has neither been shown nor alleged that the delegatory provisions of said Section 3 will ever be attempted to be exercised by the Board of County Commissioners in an unconstitutional manner, although standing in the Act as an abstract permissiveness so to exercise them. Neither is it shown that such delegatory powers, if attempted to be exercised hereafter, will not be so exercised as to leave the

Board of County Commissioners retaining such complete control and supervision over the particular functions delegated, as to thereby cure all constitutional objections that could be urged on that score, if complained if in some future proceeding.

The decree below as to Section 3 of said Chapter 17644, *supra,* having been prematurely arrived at and entered, should be and the same is hereby reversed, but without prejudice. In all other respects the decree appealed from herein has been found to be correct, and the same should be, and is hereby affirmed, with directions to the court below to enter an appropriate final decree not inconsistent with the holdings of this opinion. The suit being one instituted by a taxpayer for the advantage of the public interest of the inhabitants and taxpayers of Pinellas County with regard to the subject matter the costs in both courts should be, and they are hereby directed to be, taxed against and paid by Pinellas County.

Affirmed in part and reversed in part and remanded with directions stated in opinion.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.